# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DUANE HARPER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 16-CV-0121-CVE-FHM |
| ) | |
| NICHOLAS TIRELLO, Officer, in his ) | |
| individual capacity; ) | |
| JAMES C. PIRTLE, Sgt., in his ) | |
| individual capacity; ) | |
| DAVID J. OAKES, D.O., in his ) | |
| individual capacity; ) | |
| SEBASTIAN OTALVARO, D.O., in his ) | |
| individual capacity,[1] ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

In this civil rights action, plaintiff Duane Harper claims that on February 9, 2015, defendants Sergeant James Pirtle, Detention Officer Sebastian Otalvaro, Detention Officer David Oakes, and Deputy Nicholas Tirello violated his Fourteenth Amendment right to be free from the use of excessive force while he was detained in the David L. Moss Criminal Justice Center ("Tulsa County Jail") on alleged probation violations. Before the Court is defendants' motion for summary judgment (Dkt. # 109). Harper filed a response (Dkt. # 114), and defendants filed a reply (Dkt. # 121). For the reasons discussed below, the Court finds defendants are entitled to qualified immunity. Therefore, the Court shall grant defendants' motion for summary judgment, deny

---

[1]  Based on the parties' pleadings, the Clerk of Court is directed to correct the record to reflect defendant Otalvaro's full name as Sebastian Otalvaro. See Dkt. # 109-9 (Otalvaro Affidavit).

Harper's request for summary judgment,[2] and declare moot defendants' motion to strike (Dkt. # 110) and motion in limine (Dkt. # 111).

**I.**

The following facts are either undisputed or viewed in the light most favorable to Harper.[3] On January 7, 2015, Harper was arrested on outstanding felony warrants in two Tulsa County District Court cases, Case Nos. CF-2013-2465 and CF-2013-2140A, and booked into the Tulsa County Jail. Dkt. # 109-1, at 2-3.[4] Id. at 2. During the booking process, the intake officer observed

---

[2] In his response, Harper requests summary judgment in his favor. Dkt. # 114, at 25. Harper's request for summary judgment within his response, rather than in a separate cross-motion for summary judgment, is improper. See Hill v. Kemp, 645 F. Supp. 2d 992, 1008 (N.D. Okla. 2009) ("LCvR 7.2(e) expressly forbids a party from including a cross-motion for summary judgment in a response to a motion for summary judgment."). Even if the Court were inclined to overlook Harper's failure to comply with LCvR 7.2(e), it would deny Harper's request because defendants are entitled to qualified immunity.

[3] For consistency, the following record cites refer to the CM/ECF header page number in the upper right-hand corner of each document.

[4] Defendants assert that Harper's booking sheet indicates he "had been previously charged with assault and battery on a Detention Officer." Dkt. 109, at 8, ¶ 1 (citing Dkt. # 109-1, at 2). Harper disputes this assertion, pointing out that the booking sheet indicates he was charged with assault and battery against a detention officer in Case No. CF-2015-3651, for an offense that occurred several months after the excessive-force incident alleged in this case. Dkt. # 114, at 7, ¶ 1; see Dkt. # 109-1, at 2. Harper contends defendants have made a material false statement by suggesting this charge supports their assertion that Harper had a history of assaultive behavior toward detention officers before the incident alleged in this case occurred on February 9, 2015. Id. at 7, 20. In their reply, defendants confirm that the assault charge "referenced in their motion occurred on November 3, 2015, CF-15-3651." Dkt. # 121, at 1. Based on defendants' statement in their reply, the Court agrees with Harper that defendants have made an incorrect statement to the extent they assert the assault charge in CF-2015-3651 was a "previous" charge as of February 9, 2015. Significantly, the Court takes judicial notice of Tulsa County District Court records showing that in Case No. CF-2015-3651 Harper was convicted of assault and battery upon a detention officer on October 23, 2015, for an offense that occurred on July 10, 2015. See Oklahoma State Courts Network (OSCN), http://www.oscn.net/dockets, last visited June 16, 2018; United States v. Ahidley, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (noting that federal courts may take

(continued...)

no visible signs of injury or trauma and no physical handicaps. Dkt. # 109-2, at 2. However, Harper answered "yes" in response to the following questions: "Are you injured or currently under psychiatric or a general Doctor's Care?" and "Are you currently taking any prescription medications." Id. When Harper was booked into jail, he received a copy of an inmate handbook which outlined his expected conduct, rules, discipline, right to hearings, classification level and housing assignments. Dkt. # 109-3.

The inmate housing history sheet reflects that, on January 16, 2015, Harper refused to go to "max pod" and threatened to commit suicide. Dkt. # 109-4, at 3. Notes corresponding to the January 16, 2015 entry further reflect that Harper was "a known issue in the jail and has prevous [sic] assaultive felonies, one on a detention officer," and "has mental health issues and poses an increased threat to officers and other inmates."[5] Id. Harper was placed in a segregated cell and, several days later, was moved to a mental health cell. Id. at 2-3. On January 28, 2015, Harper was

---

[4]  (...continued)
judicial notice of publicly-filed records in other courts). The Court therefore finds it undisputed, for summary judgment purposes, that the reference in the booking sheet to Harper's charge in Case No. CF-2015-3651 does not reflect a "previous" charge for assault and battery of a detention officer. See FED. R. CIV. P. 56(e)(2) (permitting court to consider fact undisputed when party "fails to properly support an assertion of fact . . . as required by Rule 56(c)"). However, as further explained in the analysis section, the Court finds defendants' statement on this point is not material, and thus not materially false.

[5]  On this point, Harper again contends that defendants have made a material false statement by asserting that he had previously assaulted a detention officer. Dkt. # 114 at 10. However, the Court finds nothing in the record or the parties' briefs to suggest that this reference rests on the assault charge in Case No. CF-2015-3651. Rather, it appears to rest on the charge in one of the cases that led to Harper's arrest on January 7, 2015, on an outstanding warrant. See Dkt. # 109-1, at 3 (indicating arrest on outstanding warrants in Case Nos. CF-2013-2465 and CF-2013-2140A). Specifically, the Court takes judicial notice that in Case No. CF-2013-2465, Harper was convicted of assault and battery against a detention officer on October 23, 2013, for an offense that occurred on May 17, 2013. See OSCN, http://www.oscn.net/dockets, last visited June 16, 2018. Thus, the Court rejects Harper's suggestion that defendants have made a materially false statement by relying on the statement reflected in the inmate housing history sheet.

"cleared from mental health" and returned to general population. Id. at 2. Later that evening, Harper was involved in a physical altercation with other inmates. Dkt. # 109-5, at 2-3. After the altercation, Harper was examined in the medical unit and cleared for confinement in administrative segregation. Id. at 8. During the examination, the nurse observed Harper had facial injuries but was "ambulatory" and reported that Harper "denied other areas of injury." Dkt. # 109-15, at 2. Shortly after the examination, Harper reported to the nurse that he also hurt his right knee when he slipped and fell near the shower immediately before the altercation. Id. As a result of the altercation, Harper was placed in administrative segregation on January 29, 2015. Dkt. # 109-4, at 2. The next day, Harper was moved to a cell in the J-14 pod.[6] Id.

---

[6] In his original, verified complaint, Harper described the cell in the J-14 pod as a handicapped cell and stated he was placed there "due to serious Orthopedic problems." Dkt. # 1, at 3. In his response to the summary judgment motion, Harper describes his cell as a "handicapped cell," a "medical cell," and an "ADA compliant cell." Dkt. 114, at 13-14, 17-18. Other than Harper's statement in his original complaint, the Court finds no support in the record for these descriptions. In some circumstances, courts may treat a pro se plaintiff's verified complaint as an affidavit for purposes of summary judgment so long as the complaint satisfies the standards for affidavits outlined in Rule 56. See Conaway v. Smith, 853 F.2d 789, 792 (10th Cir. 1988) (per curiam); see also FED. R. CIV. P. 56(c)(4). For three reasons, the Court declines to do so here. First, after Harper obtained counsel, counsel filed an amended complaint. Dkt. # 39. The amended complaint superseded the original complaint. See LCvR 9.2(c). Second, counsel neither asked this Court to consider treating Harper's original, superseded complaint as an affidavit for summary judgment purposes nor attached an affidavit from Harper with his response to defendants' summary judgment motion. Third, one reason for treating a pro se plaintiff's verified complaint as an affidavit is to assist the pro se plaintiff who may be less capable of navigating "the complex procedural issues involved in summary judgment proceedings." Jaxon v. Circle K Corp., 773 F.2d 1138, 1140 (10th Cir. 1985) (quoting Garaux v. Pulley, 739 F.2d 437, 439 (9th Cir. 1984)). The Court declines to provide that same navigational assistance to Harper's counsel who is practicing in federal court. See, e.g., Youngquist v. Bd. of Cty. Comm'rs, No. 2:15-cv-00077-BRB-SMV, 2016 WL 9725196, at *2 n.4 (D. N.M. Dec. 23, 2016) (unpublished) (noting counsel's failures to comply with Rule 56 and stating that "[l]awyers who practice in federal court are held to a high standard"). Disregarding the superseded original complaint, the Court finds no support in the record showing that Harper was placed in a

(continued...)

On February 1, 2015, Harper submitted a request through the jail's kiosk message system. Dkt. # 114-4, at 7. Specifically, he requested to be seen by a nurse or doctor for a physical so he could start a job. Id. The next day, Harper received a response indicating he had a physical on January 19, 2015, and was "not cleared for work." Id. Later that day, Harper asked why he was not cleared for work and stated, "My body moves fine and I feel great can you please tell me what the reason is that I can [sic] work a job?" Id. Medical records submitted by Harper and relevant to his physical condition at the time of the alleged excessive-force incident reflect that he was treated in 2009 and 2010 for significant osteoarthritis in his right knee and right shoulder and that he is diabetic. Dkt. # 100-3, at 3, 8.[7]

On the morning of February 9, 2015, Harper was in the food line and became upset when Detention Officer Megan Palmer took the cellophane off his food tray. Dkt. # 109-7, at 3. Harper threatened to, and ultimately did, throw his food tray on the ground near Palmer's feet. Id. Palmer called for assistance and told the pod to lock down; Harper walked away to his jail cell. Id.

Defendants responded to Palmer's call for assistance. Dkt. # 109-8 (Pirtle Affidavit), at 2; Dkt. # 109-9 (Otalvaro Affidavit), at 2; Dkt. # 109-10 (Oakes Affidavit), at 2; Dkt. # 109-11 (Tirello Affidavit), at 2. Tirello began locking down the J-14 pod and getting inmates into their cells. Dkt.

---

[6]  (...continued)
handicapped cell. The Court therefore does not consider this an undisputed fact for summary judgment purposes. See Thomson v. Salt Lake Cty., 584 F.3d 1304, 1325 (10th Cir. 2009) (Holmes, J., concurring) (noting that at the summary-judgment stage, "plaintiff's version of the facts must find support in the record"); FED. R. CIV. P. 56(c)(1)(A) (requiring party asserting fact to cite evidentiary materials in support of factual assertions).

[7]  Harper submitted additional treatment records from 2016 and 2017. See Dkt. ## 100-2, 100-3. These records are not relevant to Harper's physical condition in 2015 when the alleged excessive-force incident occurred.

5

# 109-11, at 2.  Pirtle, a supervisor, decided Harper should be restrained and placed in administrative segregation based on Harper's interaction with Palmer.  Dkt. # 109-8, at 2.  Oakes was the first to arrive at Harper's cell door.  Dkt. # 109-10, at 2.  Oakes ordered Harper to lay down on the ground. Id.  According to Oakes, Harper "shook his head 'no' and refused to comply."  Id.  Pirtle joined Oakes outside the door of Harper's cell, followed shortly thereafter by Otalvaro.  Dkt. # 109-8, at 2; Dkt. # 109-9, at 2.  Pirtle unlocked the cell door, and Oakes opened the door.  Dkt. # 109-8, at 3.  Pirtle ordered Harper to get on the ground two more times, but Harper did not comply.  Id.; Dkt. # 109-9, at 2; Dkt. # 109-10, at 2.  Instead, Harper, who was sitting on his bed, "shook his head from side to side and refused to comply."[8]  Dkt. # 109-8, at 3; Dkt. # 109-9, at 2; Dkt. # 109-10, at 2. Tirello headed in Pirtle's direction when he heard Pirtle ordering Harper to the ground.  Dkt. # 109-11, at 2.

Before Tirello arrived, Pirtle presented his Taser and twice ordered Harper to get on the ground; Harper did not comply.  Dkt. # 109-8, at 3; Dkt. # 109-9, at 2; Dkt. # 109-10, at 2.  Pirtle then deployed his Taser and the cartridge probes contacted Harper, causing him to fall to the

---

[8]  In his original, verified complaint, Harper stated he "tried to explain that [he] was handicap [sic] and could not get down on the floor without someone's assistance."  Dkt. # 1, at 3.  For the reasons previously stated, see supra n.6, the Court declines to treat the original complaint as an affidavit for summary judgment purposes.  In the amended complaint and the response to the summary judgment motion, Harper asserts, without citation to the record, that he "was telling [the officers] he cannot get on the ground."  Dkt. # 39, at 2; Dkt. # 114, at 21.  He also asserts, without citation to the record, that he was "sitting on his bunk with his feet propped up" and thus presented no threat to defendants.  Dkt. # 114, at 24.  The Court finds it is undisputed that Harper was sitting on his bed.  However, the Court finds no record support, and therefore disregards, Harper's assertions that he told defendants he could not comply with their orders to get on the ground and that he had his feet propped up on the bed.  See Thomson, 584 F.3d at 1325; FED. R. CIV. P. 56(c)(1)(A).

ground.⁹  Dkt. # 109-8, at 3; Dkt. # 109-9, at 2; Dkt. # 109-10, at 3.  Tirello arrived at Harper's cell just as Pirtle deployed his Taser.  Dkt. # 109-11, at 2.  After the Taser's five-second cycle ended, Tirello, Oakes, and Otalvaro entered Harper's cell, removed the Taser's probes, and placed him in handcuffs.  Dkt. # 109-8, at 3; Dkt. # 109-12, at 2.  Tirello and Oakes then escorted Harper to the medical unit for a physical examination.  Dkt. # 109-10, at 3; Dkt. # 109-11, at 2.  Nurse Jessica Mobley examined Harper and cleared him for confinement in administrative segregation.  Dkt. # 109-13, at 2.  Although Harper complained of shoulder pain, Mobley did not find any apparent injuries during the examination.  Id.; Dkt. # 109-6, at 2; Dkt. # 109-15, at 11-12.  Following the examination, Harper was placed in administrative segregation.  Dkt. # 109-8, at 4.

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Conversely, "summary judgment will not lie" if there exists a genuine dispute as to any material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material when it "might affect the outcome of the suit under the governing [substantive] law."  Id.  At the summary-judgment stage, the court's task "is not 'to weigh the evidence and determine the truth of the matter but to determine whether there

---

⁹ Harper attempts to controvert defendants' statement that he fell to the ground. Dkt. # 114, at 15. He asserts instead that defendants "threw [him] to the ground after they entered into the cell." Id. Again, Harper cites no portion of the record to support this statement. Id. Because Harper's unsupported assertion is insufficient to controvert defendants' statement which is supported by three sworn affidavits, the Court considers it undisputed that Harper fell to the ground. See FED. R. CIV. P. 56(e)(2).

7

is a genuine issue for trial.'" Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) (quoting Anderson, 477 U.S. at 249). In applying the summary-judgment standard, the court "view[s] the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party." Hiatt v. Colo. Seminary, 858 F.3d 1307, 1315 (10th Cir. 2017) (quoting Twigg v. Hawker Beechcraft Corp., 659 F.3d 987, 997 (10th Cir. 2011)). But the Court is not required to adopt plaintiff's version of the facts if that version lacks record support, Thomson, 584 F.3d at 1325, or is "blatantly contradicted" by the record, Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)). Consistent with the plain language of Rule 56(a), the movant bears the ultimate burden to show there are no genuine issues for the jury to resolve and that the movant is entitled to judgment as a matter of law. Thomson, 584 F.3d at 1326.

However, when a defendant moves for summary judgment on the basis of qualified immunity, "[t]he plaintiff first must shoulder a heavy two-part burden." Id. at 1325. In determining whether plaintiff has met his or her burden to show "(1) that defendant violated a constitutional right and (2) that the right was clearly established, ordinarily courts must 'adopt' plaintiff's 'version of the facts.'" Id. (quoting Scott, 550 U.S. at 380). Nonetheless, as discussed, "a plaintiff's version of the facts must find support in the record" at the summary-judgment stage. Id. And the court need not adopt plaintiff's version of the facts if that version is "'so utterly discredited by the record that no reasonable jury could have believed' it." Id. (quoting Scott, 550 U.S. at 380). The court has discretion to determine "which of the two prongs of the qualified immunity analysis should be

8

addressed first," Pearson v. Callahan, 555 U.S. 223, 236 (2009), "and may resolve the question by finding either requirement is not met," Mascorro v. Billings, 656 F.3d 1198, 1204 (10th Cir. 2011).

### III.

Harper's amended complaint presents one claim: that defendants violated his Fourteenth Amendment due process rights by using excessive force—i.e., by tasering him—after he caused a disruption in the food line, walked back to his jail cell, and then refused to comply with defendants' repeated verbal orders to get on the ground of his cell. See Dkt. # 39; Dkt. # 74, at 13-14. Because Harper was a pretrial detainee at the time of the alleged use of excessive force, the Fourteenth Amendment's due process clause governs his claim. Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015); Porro v. Barnes, 624 F.3d 1322, 1326 (10th Cir. 2010). To establish a Fourteenth Amendment violation, a pretrial detainee must show that "the force purposely or knowingly used against him was objectively unreasonable." Kingsley, 135 S. Ct. at 2473. In excessive-force cases "objective reasonableness turns on the 'facts and circumstances of each particular case.'" Id. (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). Ultimately, several factors "bear on the reasonableness or unreasonableness of the force used," including, but not limited to: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Id. In considering these factors, courts also "must take account of the legitimate interests in managing a jail, acknowledging as part of the objective reasonableness analysis that deference to policies and practices needed to maintain order and institutional security is appropriate." Id. at 2474.

9

Relying on Kingsley, Harper contends Pirtle's deployment of his Taser was objectively unreasonable under the circumstances because Harper was sitting on his bed in a secured jail cell, he was not being combative or aggressive, and he could not get on the ground because he has osteoarthritis in both knees and needs a shoulder replacement. Dkt. # 114, at 21. Harper appears to contend that Oakes, Tirello, and Otalvaro are liable for Pirtle's use of excessive force because they either participated in the use of force or failed to intervene. Id. at 14, 15, 19; see Mascorro, 656 F.3d at 1204 n.5 (stating that "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable [under § 1983] for his nonfeasance" (quoting Mick v. Brewer, 76 F.3d 1127, 1136 (10th Cir. 1996))).

Defendants move for summary judgment on the excessive-force claim asserting (1) that they did not violate Harper's Fourteenth Amendment right to due process and (2), that even if they did, they are entitled to qualified immunity. Dkt. # 109, at 13, 19.

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established . . . constitutional rights of which a reasonable person would have known.'" Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting Pearson, 555 U.S. at 231). As discussed, to overcome defendants' assertion of qualified immunity, Harper bears the initial burden to show both (1) that defendants' violated the constitution and (2) that the law as to the constitutional right at issue is clearly established. Thomson, 584 F.3d at 1325. If he fails to make either showing, defendants are entitled to qualified immunity. Mascorro, 656 F.3d at 1204. Here, the Court finds it unnecessary to resolve whether Pirtle used excessive force in deploying his Taser, or whether the remaining defendants can be held liable for failing to intervene, because Harper fails to satisfy the "clearly established" prong of the qualified-immunity analysis.

10

"The 'dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Hernandez v. Mesa, 137 S. Ct. 2003, 2007 (2017) (per curiam) (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)). "A plaintiff may show clearly established law by pointing to either a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, existing at the time of the alleged violation." T.D. v. Patton, 868 F.3d 1209, 1220 (10th Cir. 2017). A plaintiff need not point to "a case directly on point for a right to be clearly established." Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting White v. Pauly, 137 S. Ct. 548, 551 (2017) (per curiam)). But "existing precedent must have placed the statutory or constitutional question beyond debate." Id. (quoting White, 137 S. Ct. at 551). In addition, the Supreme Court has repeatedly emphasized that courts should not "define clearly established law at a high level of generality." Kisela, 138 S. Ct. at 1152 (quoting City and Cty. of San Francisco v. Sheehan, 135 S. Ct. 1765, 1776 (2015)). "[S]pecificity is especially important in the Fourth Amendment context, where the [Supreme] Court has recognized that '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'" Mullenix, 136 S. Ct. at 308 (quoting Saucier, 533 U.S. at 205). This is so because the "[u]se of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." Kisela, 138 S. Ct. at 1153 (quoting Mullenix, 136 S. Ct. at 309); see also Aldaba v. Pickens, 844 F.3d 870, 876 (10th Cir. 2016) (applying Mullenix and noting that courts may not "rely[] on excessive-force cases markedly different from" the case at hand to conclude that the law is clearly established). In Kingsley, the Supreme Court held that the same objective-

reasonableness standard that applies in Fourth Amendment excessive-force claims also applies in Fourteenth Amendment excessive-force claims asserted by pretrial detainees. 135 S. Ct. at 2473. Thus, the same need for specificity, i.e., the need for existing precedent that squarely governs the specific facts at issue, exists in the Fourteenth Amendment excessive-force context.[10]

Viewing the undisputed facts in Harper's favor—to the extent those facts find support in the record—shows that Harper had no apparent physical disabilities when he was booked into the Tulsa County Jail on January 7, 2015. Dkt. # 109-2, at 2. Harper did, however, have a prior diagnosis of osteoarthritis in his right knee and right shoulder. Dkt. # 100-3, at 3, 8. On January 28, 2015, Harper fell near the shower and was involved in an altercation with other inmates. Dkt. # 109-5, at 2-3; Dkt. # 109-15, at 2. Following the altercation, a nurse examined Harper and observed facial

---

[10] Harper relies heavily on affidavits from two expert witnesses—Christopher Ward and William Yarborough, M.D.—to oppose defendants' motion for summary judgment. Dkt. # 114, at 19-22. Defendants have filed two separate motions to preclude Harper from relying on testimony from either witness. Through the first motion, defendants ask this Court to "strike Mr. Ward as an expert pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)." Dkt. # 110, at 1. Through the second motion, defendants seek, in part, to preclude plaintiff from presenting testimony from Ward and Dr. Yarborough based on plaintiff's failure to provide defendants with written reports from either expert as required by FED. R. CIV. P. 26(a)(2)(B). Dkt. # 111, at 2-5; see FED. R. CIV. P. 37(c)(1) (permitting court to preclude party from using expert witness "to supply evidence on a motion, at a hearing, or at a trial" if party fails to provide information required under Rule 26(a), "unless the failure was substantially justified or is harmless"). The Court has reviewed Harper's proffered affidavits and finds no reason to consider them in resolving the threshold question of whether Harper has met his burden to overcome the defendants' assertion of qualified immunity. Both affidavits appear to address whether defendants' actions violated the Constitution. See Dkt. # 110-1 (proffering Ward's opinions, based on his training and experience, as to when Taser use is appropriate); Dkt. # 111-2 (proffering Dr. Yarborough's findings and conclusions based on his review of Harper's medical records and his 2018 examination of Harper). But neither affidavit informs the analysis of whether any existing case law squarely governs the defendants' particular conduct in this case. Thus, the Court finds it unnecessary to consider defendants' objections as to the admissibility of these affidavits before conducting the qualified-immunity analysis.

injuries but noted that Harper was "ambulatory." Dkt. # 109-15, at 2. Later that day, Harper told the nurse he had swelling in his right knee from falling near the shower. Id. A few days after his fall, on February 1, 2015, Harper requested a physical so he could be cleared for work, reporting that his "body moves fine" and he "feel[s] great." Dkt. # 114-4, at 7. Eight days after requesting work clearance, on February 9, 2015, Harper caused a disruption in the food line by throwing a food tray near Palmer's feet, walked back to his cell,[11] sat on his bed, and closed the cell door. Dkt. # 109-7, at 3. Palmer called for assistance and initiated a lock down. Id. Pirtle, a supervisor, responded to Palmer's call and determined Harper's actions toward Palmer warranted placing Harper in administrative segregation. Dkt. # 109-8, at 2. At the time of the incident, Pirtle was aware that Harper had been "classified as an assault risk."[12] Id. at 4.

After Harper refused to comply with Oakes' multiple commands to get on the ground of his jail cell, Pirtle unlocked the cell door, and Oakes opened it. Dkt. # 109-8, at 2-3; Dkt. # 109-10, at 2. Pirtle twice more directed Harper to get on the ground; Harper refused, shaking his head left to

---

[11] Harper does not dispute that he walked back to his jail cell after throwing the food tray. And the Court finds nothing in the record suggesting, let alone supporting, that Harper required an assistive device, such as a cane or walker, to return to his cell.

[12] Pirtle states in his affidavit that he was aware that Harper "had been classified as an assault risk based on his behavior since being incarcerated on January 7, 2015." Dkt. # 109-8, at 4. However, there is no indication in the record that, at the time of the alleged excessive-force incident, Pirtle or the other defendants had personal knowledge of Harper's January 28, 2015, physical altercation with other inmates. Likewise, there is no indication in the record that defendants were aware of Harper's 2013 conviction for assault and battery of a detention officer. Consequently, the Court considers only that Pirtle, as a supervising detention officer, was aware of Harper's inmate classification. See White, 137 S. Ct. at 550 (noting that in qualified-immunity cases, a court "considers only the facts that were knowable to the defendant officers"); Saucier, 533 U.S. at 207 ("Excessive force claims . . . are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred.").

13

right. Dkt. # 109-8, at 3. Pirtle presented his Taser and repeated his verbal commands two more times; Harper did not comply. Id. Pirtle then deployed his Taser for one, five-second cycle. Id.; Dkt. # 109-12, at 2. This permitted Oakes, Otalvaro, and Tirello to restrain Harper and extract him from his jail cell so he could be transported to administrative segregation. Dkt. # 109-8, at 3-4; Dkt. # 109-10, at 3.

On this record, the situation defendants confronted was one that required them to extract from a jail cell a pretrial detainee who (1) had been classified as an "assault risk" based on his behavior during his stay in the jail, (2) had just caused a disruption in a common area of the jail, precipitating a lock down, (3) refused to comply with defendants' repeated verbal orders to get on the ground, and (4) had no apparent physical disabilities that would prevent him from complying with those orders.

Harper fails to cite any existing case law clearly establishing that Pirtle's use of a Taser in this situation was unlawful. Harper addresses clearly established law in two sections of his response. In both sections, he cites this court's unpublished decision in Williams v. Miller, No. 15-CV-0028-JED-FHM, 2016 WL 4537750 (N.D. Okla. Aug. 30, 2016) (unpublished). Dkt. # 114, at 25, 28-29. Harper's reliance on this unpublished decision is misplaced. See Green v. Post, 574 F.3d 1294, 1305 n. 10 (10th Cir. 2009) (reiterating that "[i]n determining whether the law is clearly established . . . [a court] may not rely upon unpublished decisions"); Mecham v. Frazier, 500 F.3d 1200, 1206 (10th Cir. 2007) (rejecting plaintiff's reliance on factually distinguishable unpublished Tenth Circuit decision and stating, "[a]n unpublished opinion . . . even if the facts were closer, provides little support for the notion that the law is clearly established"); Woodward v. City of Worland, 977 F.2d 1392, 1397 (10th Cir. 1992) (noting that "a district court decision will not

ordinarily clearly establish the law even of its own circuit" (citation and internal quotation marks omitted)). The Court therefore presumes Harper intends to rely on the excessive-force cases discussed in Williams to support his position that the law is clearly established. However, even granting Harper that generous presumption, the Court finds that none of those cases is "close enough on point to make the unlawfulness of [defendants'] actions apparent." Mascorro, 656 F.3d at 1208.

First, the two published Tenth Circuit decisions this court examined in Williams involved significantly different situations. See Estate of Booker v. Gomez, 745 F.3d 405, 424-26 (10th Cir. 2014) (concluding reasonable jury could find that deputies used excessive force against arrestee during booking process when—while arrestee was handcuffed, face down on ground, and subdued by multiple deputies—one deputy placed substantial pressure on arrestee's back, a second deputy used a Taser on arrestee for three seconds longer than recommended, a third deputy applied a carotid restraint for approximately two and a half minutes, and arrestee died as a result of the carotid restraint); Casey v. City of Federal Heights, 509 F.3d 1278, 1279, 1282-86 (10th Cir. 2007) (concluding reasonable jury could find that city police officers used excessive force when, without warning, they "grabbed, tackled, Tasered, and beat[]" a citizen for temporarily removing a court file from a public courthouse when he went outside the courthouse to retrieve money from his truck to pay a traffic fine). And, to the extent Harper relies on this Court's statement in Williams that Casey "laid out the ground rules that a Taser is not to be employed where a lesser amount of force could be used to gain compliance," Williams, 2016 WL 4537750, at *8, that reliance is misplaced. Even accepting that Casey laid out that rule, it is stated in overly general terms and does not clearly establish "the violative nature of [defendants'] *particular* conduct." Mullenix, 136 S. Ct. at 308 (emphasis in original) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011)); see also Kisela, 138

15

S. Ct. at 1152 (reiterating that courts should not "define clearly established law at a high level of generality"). In short, reading <u>Casey</u> and <u>Booker</u> "would not apprise every objectively reasonable [detention] officer" that it would violate the Fourteenth Amendment's prohibition on the use of excessive force to use a Taser for five seconds against a pretrial detainee who (1) caused a disturbance in a common area of the jail, (2) returned to his cell and sat on his bunk, (3) refused to comply with repeated verbal commands to get on the ground, and (4) had no readily apparent physical limitations that prevented his compliance. <u>Aldaba</u>, 844 F.3d at 877. Thus, these two Tenth Circuit decisions do not advance Harper's position that Pirtle's use of the Taser, or the conduct of the other officers in failing to intervene, violated clearly established law.[13]

Likewise, none of the out-of-circuit decisions discussed in <u>Williams</u> squarely governs the specific facts at issue in this case. <u>See</u> <u>Lewis v. Downey</u>, 581 F.3d 467, 477-78 (7th Cir. 2009) (concluding reasonable jury could find detention officer used excessive force in violation of Eighth Amendment by deploying Taser, without warning, against inmate who was "lying on his bunk" with his back to the cell door and "weak" from several days of fasting after inmate failed to comply with

---

[13] <u>Williams</u> also briefly discussed <u>Hunter v. Young</u>, 238 F. App'x 336 (10th Cir. 2007) (unpublished). <u>See</u> <u>Williams</u>, 2015 WL 4537750, at *8. As noted, an unpublished decision does not clearly establish the law for purposes of qualified-immunity. <u>Green</u>, 574 F.3d at 1305 n.10. Even if it could, <u>Hunter</u> undermines Harper's position. In <u>Hunter</u>, an inmate was standing in his cell following a brief physical altercation with two deputies who delivered medication to his cell. 238 F. App'x at 336. The defendant, who was not involved in the altercation, accompanied the deputies when they returned to the inmate's cell to retrieve dropped keys. <u>Id.</u> The defendant twice ordered the inmate to sit on his bunk and warned him he would deploy his Taser if the inmate failed to comply. <u>Id.</u> The inmate did not comply, and the defendant tased him. <u>Id.</u> Like Harper, the inmate claimed he failed to comply due to physical limitations. <u>Id.</u> at 339. While the Tenth Circuit concluded that the inmate failed to sufficiently allege a constitutional violation under the Eighth Amendment, it reached that conclusion by applying several of the <u>Graham</u> factors and reasoned that the inmate did not "demonstrate[] that use of the taser was objectively unreasonable" under the circumstances. <u>Hunter</u>, 238 F. App'x at 338-39.

16

"a single order" to get up); Orem v. Rephann, 523 F.3d 442, 446-47 (4th Cir. 2008) (concluding reasonable jury could find deputy's use of Taser against "unruly" female arrestee violated constitution when arrestee "was handcuffed, weighed about 100 pounds, had her ankles loosened in the hobbling device which [another deputy] was tightening, and was locked in the back seat cage" of a patrol car), abrogated on other grounds by Wilkins v. Gaddy, 559 U.S. 34 (2010); Hickey v. Reeder, 12 F.3d 754, 759 (8th Cir. 1993) (finding, "as a matter of law, that the use of a stun gun to enforce" orders from several detention officers that inmate sweep his jail cell "was both an exaggerated response to" inmate's refusal to comply with the housekeeping order and "a summary corporal punishment that violated [his] Eighth Amendment right to be free of cruel and unusual punishment"). Each of these cases is "markedly different from this one." Aldaba, 844 F.3d at 876. As a result, these cases also do not support Harper's position that Pirtle's use of the Taser, and the other officers' failure to intervene, violated clearly established law.

**IV.**

Because Harper failed to meet his burden to demonstrate that the defendants' conduct in this case violated clearly established law, all four defendants are entitled to qualified immunity as to Harper's Fourteenth Amendment excessive-force claim. The Court therefore grants defendants' motion for summary judgment, denies Harper's request for summary judgment, and declares moot defendants' pending motions. As a result of the summary judgment ruling in defendants' favor, all remaining scheduling order deadlines are hereby stricken and this case is terminated.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. Defendants' motion for summary judgment (Dkt. # 109) is **granted** on the basis of qualified immunity.

2. Harper's request for summary judgment (Dkt. # 114 ) is **denied**.

4. Defendants' motion to strike (Dkt. # 110) and motion in limine (Dkt. # 111) are **declared moot**.

5. All remaining scheduling order deadlines are hereby **stricken** and this case is terminated.

6. A separate judgment shall be entered herewith.

**DATED** this 19th day of June, 2018.

*[signature]*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE